Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4923 | **DATE** | JUN 2 1 2001 |
| **CASE TITLE** | Underwood v. Rush Presb. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the defendant's motion for summary judgment [5-1] is GRANTED. This case is closed.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 2 2 2001 | |
| | Notified counsel by telephone. | date docketed | 14 |
| X | Docketing to mail notices. | | |
| X | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| dc(lc) | courtroom deputy's initials | 01 JUN 21 PM 5: 07 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VANESSA UNDERWOOD, | ) |
| Plaintiff, | ) |
| | ) No. 00 C 4923 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, | ) |
| Defendant. | ) |

JUN 2 2 2001

## MEMORANDUM OPINION AND ORDER

Vanessa Underwood ("Underwood") brings a claim fo race discrimination against her former employer, Rush Presbyterian- St. Luke's Medical Center ("Rush"). Before this court is Rush's motion for summary judgment. For the reasons discussed below, Rush's motion is granted.

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences



drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that there exists no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2515.

## II. Background

The following facts, set forth in the defendant's statement of material facts, are undisputed. On March 24, 1997, Underwood, an African American, was hired by Rush as a Patient Care Technician ("PCT"). As a PTC, Underwood took vital signs, bathed and fed patients, and provided general patient care. From April 1997 to December 1998, Underwood

worked a rotating shift on an oncology unit at 10 Kellogg. Pl. 56.1(a) Stmnt. ¶ 5. During her tenure at 10 Kellogg, Underwood took two extended absences for non-occupational injuries. Her first leave lasted a month, from March 4 through April 3, 1998, and the second leave was for six weeks, from August 24 through October 4, 1998. ¶¶ 7-8. Upon her return from those leaves of absence, both of which were covered under the Family and Medical Leave Act ("FMLA"), Underwood was reinstated without incident. Id.

While Underwood worked at 10 Kellogg, attendance and tardiness problems plagued her record. In October 1997, she was issued a written warning for "unavailability for work." ¶ 6. Specifically, she was cited for missing work on four days and being tardy on nine separate occasions from September 1, 1997 through October 1, 1997. She was also disciplined for failure to follow departmental policy in not giving sufficient advance notice of three absences. Id. In October 1998, Underwood was again reprimanded for eight absences during the calendar year. ¶ 9. In her October 1998 performance review, Underwood received favorable evaluations. Pl. Exh. A-7. In the area of "accountability by being punctual at work as scheduled," however, Underwood did not fare so well: her evaluator noted that she "need[ed] to correct absenteeism immediately" and Underwood was given unsatisfactory ratings. ¶ 10.

On December 1, 1998, Underwood transferred, at her request, to unit 7 North. ¶ 11. Approximately four months later, on March 26, 1999, Underwood was issued a written warning for excessive absenteeism. ¶ 16. The warning noted that Underwood had missed work on December 16-17, 1999, January 18-24, 2000, February 16-21, March 7, March 17, and March 19-21. Pl. Exh. A-8. The supervising nurse also added that she had explained to Underwood that more than six absences in a twelve month period was excessive. Id. Underwood claims that

she does not recall receiving such a notice. The issuing clinical nurse coordinator noted on the warning that Underwood refused to sign the document. ¶ 16.

On March 29, 1999, Underwood once again suffered a non-occupational injury which required her take a FMLA leave. ¶ 17. When Underwood submitted her leave request, she identified May 10, 1999 as her anticipated return date. Id. Pursuant to FMLA and Rush policy, an employee is not entitled to reinstatement to her former position if she does not return to work before her twelve weeks of annual FMLA leave are depleted. Pl. Exh. B-3. A letter dated April 6, 1999, was sent to Underwood stating that her twelve week leave allowance expired on May 10. ¶ 20. Although Underwood claims not to have seen this letter, Rush received a signed postal return receipt confirming delivery on April 9, 1999. Id.

On April 26, 1999, Deborah Morris, a clinical nurse manager and one of Underwood's supervisors, called Underwood at home. ¶ 21. Morris inquired about Underwood's return to work. Id. According to Morris' written account of the conversation, Underwood informed her that she was wearing a cast, but that it would be removed on May 13, 1999. Id. Underwood asserts that her cast was actually scheduled to be removed on May 10. In any case, Morris informed Underwood that if she failed to return to work on May 10, her job would not be guaranteed. ¶ 21. Although Underwood does not recall this phone conversation, Morris prepared, in the normal course of business, a handwritten file memo recounting the details of the call. Id. In addition, Morris sent a letter to Underwood's home confirming the April 26 conversation. She sent the letter via registered mail on April 30, 1999, and received a return receipt reflecting delivery on May 4, 1999. ¶ 22.

On May 10, 1999, Underwood met with Morris at Rush. ¶ 25. Underwood, still wearing a splint on her ankle, was not yet ready to return to work. ¶ 26. Underwood assured Morris that the splint would be removed the next day during her doctor's appointment. Id. However, she was unsure of when she would be released to return to work. Because Morris could not know if and when Underwood would be able to return to work, she confirmed that Underwood's position would not be held beyond May 10. On May 12, Morris sent letter to Underwood stating that "your job as a Patient Care Technician is no longer held as of May 10, 1999." ¶ 29.

On May 11, Underwood had her cast removed. ¶ 27. On May 17, 1999, Underwood's doctor authorized her return to work. ¶ 27. Until September 1999, Underwood's position was covered by the supplemental staffing office and other nurses and PTCs. Thereafter, an African-American PCT filled the position.

Underwood filed the instant suit on August 11, 2000. She alleges that she was terminated because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq, and Section 1981, 42 U.S.C. § 1981.

### III. Discussion

To establish a claim of racial discrimination, a plaintiff may follow two evidentiary paths. Kormoczy v. Secretary, U.S. Dept. of HUD, 53 F.3d 821, 824 (7th Cir. 1995). First, a plaintiff may present direct evidence of discriminatory intent. Essex v. United Parcel Service, 111 F.3d 1304, 1308 (7th Cir. 1997). Alternatively, she may utilize an indirect method to raise an inference of an illegal motive, which involves a burden-shifting method established by the

Supreme Court in McDonnell Douglas. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817 (1973).

Under this latter framework, which involves a burden-shifting method of proof, the plaintiff bears the initial burden of proving a prima facie case of racial discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824. Accordingly, she must demonstrate that: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably. Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995); Kirk v. Fed. Prop. Management Corp., 22 F.3d 135, 138 (7th Cir. 1994). Establishing this prima facie case creates a rebuttable presumption of discrimination. Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 722 (7th Cir. 1998).

The burden then shifts to the employer to articulate legitimate, non-discriminatory reasons for the challenged action. Id. The explanation must be legally sufficient to justify a judgment in the employer's favor. Kirk, 22 F.3d at 138 (citing Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094 (1981)). If the employer satisfies this burden of production, the presumption of discrimination dissolves, and the burden of production shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons proffered by her employer are actually pretext for discrimination. Id.

In this case, Underwood is neither able to establish her prima facie case or establish pretext. The parties do not dispute that Underwood belongs to a protected class and that she suffered an adverse employment action. No reasonable juror, however, could conclude from this record that Underwood was meeting her employer's legitimate expectations.

Because of her recurring absenteeism, Underwood's supervisor's at Rush considered her unreliable. She was cited on multiple occasions for excessive absences and tardiness. In October 1997, while she worked on Kellogg 10, Underwood was issued two disciplinary warnings. Again in October 1998, she was reprimanded for missing eight days of work. In addition, Underwood's October 1998 evaluation noted that her attendance was below standard. She was urged to "correct absenteeism immediately." Even after her transfer to 7 North, Underwood continued to have problems. She missed work on December 16-17, 1999, and January 18-24, February 16-21, March 7, March 17, and March 19-21, 2000. Thus, on March 26, four months after transferring to 7 North, Underwood was issued yet another written warning for excessive absenteeism.

Three days later, Underwood informed the nurse managers that she would be taking an FMLA leave until May 10. The nurse managers insisted that she return on May 10, when her FMLA leave period expired. In light of Underwood's recurring missed attendance, her supervisors were unwilling to grant her additional non-FMLA leave days. Underwood, who had injured her ankle, planned to have her cast removed shortly after May 10, but she was unsure of when her doctor would authorize her return to work. Although her supervisors were prepared to comply with Underwood's FMLA right to reinstatement if she returned on May 10, they were unwilling to hold a job for an employee whose return date was indeterminate and whose prior attendance record was problematic.

As this court has noted previously, "[a]ttendance and promptness are considered key components of an employee's work performance." Edwards v. Atty Registration & Disciplinary Comm'n of the Illinois S. Ct., No. 97 C 6876, 1999 WL 558124, at *6 (N.D. Ill. Jul. 26, 1999)

(citing Oates v. Discovery Zone, 116 F.3d 1161, 1171 (7th Cir. 1997)). Underwood's absences disrupted the nursing staff's ability to deliver reliable patient care. Rush acknowledges that in every other respect, Underwood was a competent and qualified PTC. Other than in the area of attendance, her performance ratings were satisfactory. In January 1999, Underwood was commended for reporting to work during a heavy blizzard. For two months, Underwood worked the third shift by herself until Rush hired a second PTC in 7 North. Yet Underwood's attendance problems fundamentally undercut her dependability. As such, Rush considered her unreliable and reasonably concluded that Underwood was not meeting their legitimate job expectations.

In addition, Underwood fails to demonstrate that similarly situated non-African Americans were treated more favorably. The plaintiff claims that non-African American employees were permitted to take unpaid leaves for medical reasons. Yet the only support she supplies for this assertion is a statement from defendant's answer to the complaint, in which Rush acknowledges that it has "allowed other employees, regardless of race, to take time off work without pay for medical reasons" and has "allowed employees, regardless of race, to take non-FMLA leave." Answ. ¶¶ 29, 37. Rush admits that other employees were allowed leaves of absence, but the defendant explicitly disclaims any racially-selective decisionmaking. In other words, Rush's statement does not raise an inference of race-based differential treatment.[1]

---

[1] In her response brief, Underwood argues:
Since there are no documents evidencing that African Americans were treated similarly and Defendant even admitted that other employees were allowed to take unpaid leave, the fact that Defendant refused to give Plaintiff an extra day off from work unpaid shows that African Americans were treated unfavorably. Defendant cannot now go back and claim that Plaintiff was treated similarly to non-African Americans without producing evidence to that effect.

Resp. at 7. Underwood misunderstands her burden of proof. It is not up to Rush to demonstrate that the plaintiff was not discriminated against. Rather, Underwood bears the burden of

Assuming that Underwood could meet her burden of setting forth a prima facie case, she cannot show that Rush's justification is pretextual. Rush presents a legitimate reason for refusing to hold Underwood's position beyond May 10. In light of Underwood's history of attendance problems, the nurse managers were unwilling to allow her any extra leave beyond the twelve weeks required under Rush and FMLA policy. When Underwood met with Morris on May 10, the day her FMLA leave expired, she was unsure of when her doctor would release her to work. Faced with this uncertainty, coupled with Underwood's spotty attendance record, Morris refused to extend Underwood's leave period.

The burden then shifts to Underwood to show that Rush's stated reason for not holding her job is actually a cover-up for race discrimination. Underwood is unable to satisfy her burden. She does not refute the fact that she had regular problems with her attendance for which she was reprimanded on several occasions. She argues, however, that her attendance record is irrelevant because "Defendant's articulated reason for terminating Plaintiff was that she was unable to work the day her FMLA expired." Def. Resp. at 9. "If Plaintiff's prior absences were legitimately excused at the time they occurred," Underwood maintains, "Defendant cannot now bring up the absences as illegitimate [sic] reasons for termination." Id.

Underwood's attendance history cannot be discounted, however. Underwood's request to take leave beyond the expiration of her FMLA allowance may have triggered Rush's decision not to hold her position, but it was merely the tip of the iceberg. Underwood's attendance history was critical to her supervisors' conclusion that she could not be relied upon. In her affidavit,

---

establishing that Rush treated other races more favorably as part of her prima facie case. Without any such evidence presented by the plaintiff, there can be no inference of discrimination.

Morris testified that Underwood's supervisors agreed that, even without considering Underwood's FMLA absences, her "attendance was not sufficiently reliable that we could count on her to provide continuous patient care on the night shifts." Morris Dep. ¶ 10. Moreover, Underwood was not denied any leave time and reinstatement rights provided by Rush and FMLA policy.

Underwood points out that when she met with Morris on May 10, she informed her that her doctor's appointment for that day had been cancelled, but would be rescheduled within the next day or two. Underwood's splint was to be removed at that time. Underwood is unhappy that she was denied an extra couple of days of unpaid medical leave to have her cast removed. However, Underwood could not provide Morris with a date on which she would be released to work, and Morris therefore decided not to hold her position beyond May 10. Whether Morris's decision was harsh or not is not a relevant concern. Even where an employer's policies are "petty," "Title VII does not prohibit employers from making employment decisions based on what an employee considers to be a de minimis infraction." Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1034 (7th Cir. 1999).

Federal law imposed upon Underwood's supervisors an obligation to grant her twelve weeks of FMLA leave. They were prepared to oblige themselves to that extent. Yet when Underwood requested an indeterminate amount of additional days off beyond that required under the FMLA, her supervisors were unwilling. In light of Underwood's history of unreliability, Rush was well within its rights to deny her request for additional leave. Nothing in this record supports an inference that this decision was racially motivated. Consequently, the defendant's motion for summary judgment is granted.

## IV. Conclusion

For the foregoing reasons, summary judgment is entered against Underwood and in favor of Rush. This case is closed.

Enter:

*[signature: David H. Coar]*

**David H. Coar**

**United States District Judge**

Dated: JUN 2 1 2001